UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> LEXINGTON INSURANCE COMPANY, <br><br> Defendant. | Case No. 14 Civ. 6547 (CM) (JLC) |

**CON EDISON'S MEMORANDUM OF LAW IN OPPOSITION TO LEXINGTON'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

David L. Elkind
ORRICK HERRINGTON & SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005
202-339-8462 (Phone)
202-339-8500 (Facsimile)
delkind@orrick.com

*Attorney for Plaintiff Consolidated Edison
Company of New York, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 4

    A.    Con Edison Sustained Damages as a Direct Result of Lexington's Breach .......... 4

        1.    Lexington's Non-Payment has Left Con Edison in a Materially Worse Position ................................................................................................ 4

        2.    Payment by Lexington Would Not Constitute "Double Recovery" .......... 6

    B.    Con Edison May Recover Pre-Notice Defense Costs ........................................... 8

CONCLUSION ............................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Ins. Co. v. Aetna Cas. & Sur. Co.*,
 475 N.Y.S.2d 219 (N.Y. Sup. Ct. 1984) ................................................................................5

*Asher v. Unarco Material Handling, Inc.*,
 862 F. Supp. 2d 551 (E.D. Ky. 2012) ....................................................................................8

*Automobile Ins. Co. of Hartford v. Cook*,
 7 N.Y.3d 131 (2006) ..............................................................................................................4

*Barney Greengrass, Inc. v. Lumbermans Mut. Cas. Co.*,
 2010 WL 3069560 (S.D.N.Y. July 27, 2010), *aff'd*, 445 F. App'x 411 (2d Cir.
 2011) ......................................................................................................................................5

*Cont. Cas. Co. v. Rapid-Am. Corp.*,
 80 N.Y.2d 640 (1993) ............................................................................................................8

*Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*,
 2008 WL 2477420 (N.D. Cal. June 18, 2008) ...................................................................5, 6

*Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*,
 2008 WL 3270922 (N.D. Cal. Aug. 6, 2008) ........................................................................7

*Garofalo v. Empire Blue Cross & Blue Shield*,
 67 F. Supp. 2d 343 (S.D.N.Y. 1999) .....................................................................................8

*General Accid. Fire & Life Assur. Corp. v. Piazza*,
 4 N.Y.2d 659 (1958) ..............................................................................................................5

*HRH Const. Interiors, Inc. v. Royal Surplus Lines Ins. Co.*,
 791 N.Y.S.2d 76 (1st Dep't 2005) .........................................................................................8

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*,
 1999 WL 993689 (S.D.N.Y. Nov. 2, 1999), *aff'd in part, vacated in part on
 other grounds, rev'd in part on other grounds*, 252 F.3d 608 (2d Cir. 2001) .........................9

*Inchaustegui v. 666 5th Ave. Ltd. Partnership.*, 96 N.Y.2d 111, 113 (2001) .................................7

*Mack-Cali Realty Corp. v. NGM Ins. Co.*,
 990 N.Y.S.2d 253 (2d Dep't 2014) ........................................................................................8

*Reliance Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
 691 N.Y.S.2d 458 (1st Dep't 1999) .......................................................................................7

*Smart Style Indus., Inc. v. Pennsylvania Gen. Ins. Co.*,
   930 F. Supp. 159 (S.D.N.Y. 1996) ....................................................................................8, 9

*Sport Rock International, Inc. v. American Cas. Co. of Reading, Pa.*,
   878 N.Y.S.2d 339 (1st Dep't 2009) .........................................................................................5

*Sucrest Corp. v. Fisher Governor Co., Inc.*,
   371 N.Y.S.2d 927 (N.Y. Sup. Ct. 1975) ..................................................................................9

*Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*,
   993 F. Supp. 2d 379 (S.D.N.Y. 2014) .....................................................................................8

*U. S. Fid. & Guar. Co. v. Copfer*,
   48 N.Y.2d 871 (1979) ..............................................................................................................4

*Weyerhauser Co. v. Commercial Union Ins. Co.*,
   142 Wash.2d 654 (2000) ..........................................................................................................6

Plaintiff, Consolidated Edison Company of New York, Inc. ("Con Edison"), respectfully submits this memorandum of law in opposition to the motion for partial summary judgment (the "Motion") filed by Lexington Insurance Company ("Lexington").  Lexington has failed to meet its burden on summary judgment to show that it is entitled to judgment as a matter of law on the issues raised in the Motion.  Lexington's Motion also misunderstands the nature of Con Edison's damages.  As Con Edison demonstrates, (1) Con Edison has suffered damages resulting from the premature exhaustion of its insurance policies because of Lexington's breach of its duty to defend; and (2) Con Edison is entitled to recover defense costs that were incurred as soon as it was sued, even before it gave notice to Lexington.  The Court therefore should deny Lexington's Motion.

## INTRODUCTION

Lexington was obligated to pay Con Edison's defense costs for lawsuits relating to a July 18, 2007 steam distribution main rupture in Midtown Manhattan (the "Steam Rupture Lawsuits"), pursuant to a primary general liability policy under which Con Edison is an additional insured (the "Lexington Policy").  Lexington does not dispute this fact in its Motion. Indeed, Lexington *agreed* to defend Con Edison as early as October 6, 2008 (Ex. 15 to Declaration of Timothy D. Kevane in Support of Defendant's Motion for Partial Summary Judgment[1] at LEX0000095), but never defended Con Edison before it paid its $2 million policy limits in May 2011, prospectively extinguishing its duty to defend.  (Kevane Decl., Exs. 18 and 19.)

Despite its promise to defend Con Edison, Lexington's subsequent, and continued, failure to defend Con Edison forced Con Edison to turn to other insurers that sold Con Edison excess

---

[1] Hereinafter, "Kevane Decl."

1

liability insurance policies for payment of those costs.[2] Lexington's breach of the duty to defend caused Con Edison three types of damages.[3]

The first category of damages is the most significant, and concerns Lexington's first argument in the Motion. Lexington's failure to defend Con Edison forced Con Edison prematurely to seek coverage under its Associated Electric & Gas Insurance Services Limited ("AEGIS") first-layer excess policy, which had a $35 million limit. When the AEGIS policy was exhausted, Con Edison had to obtain coverage from its second-layer excess carrier, Energy Insurance Mutual ("EIM"). Because the AEGIS and EIM policies are excess policies, they do not have a duty to defend Con Edison, they merely pay defense costs. (*See* Kevane Decl., Ex. 6 at CONED0000662 (AEGIS policy's Insuring Agreement) and CONED0000668 (AEGIS policy's definition of "Ultimate Net Loss") and Ex. 7 at CONED0000679 (EIM policy provision stating policy is governed by the provisions of the underlying AEGIS policy).) As the Motion admits, payments of defense costs under Con Edison's excess policies reduce the policy limits. (Motion at 2.) The Motion fails to acknowledge that the Lexington Policy, in contrast, is a primary policy with a duty to defend, and that defense costs paid by Lexington do not reduce the policy limits. (*See* Kevane Decl., Ex. 13 at LEX0003638 (Lexington Policy's Insuring Agreement), LEX0003685, and LEX0003701.) Because it sold a primary policy, Lexington should have defended Con Edison and paid Con Edison's defense costs immediately, until

---

[2] Lexington attempts to excuse its failure to defend Con Edison because Con Edison allegedly did not send Lexington Con Edison's defense invoices when Lexington requested them. (Motion at 4.) Lexington did not explain why it needed the invoices to undertake its defense of Con Edison. Con Edison repeatedly advised Lexington of the status and magnitude of its defense of the Steam Rupture Lawsuits, and Lexington did not need the invoices to satisfy its obligation to defend Con Edison.

[3] Lexington's calculation of Con Edison's damages (Motion at 1) is incorrect, but in any event is irrelevant to the Motion.

Lexington paid its $2 million in policy limits, but Lexington did nothing to defend Con Edison or pay its defense costs.

The main premise of the Motion, that Con Edison seeks a double recovery, is wrong, because Con Edison does not seek to keep the money that Lexington should pay for the first category of damages. Rather, Con Edison seeks to recover money from Lexington to restore the EIM policy limits by the amount that Lexington should have paid to defend Con Edison. At this point, the EIM policy limits have been prematurely reduced by many millions of dollars by the amount of defense costs that Lexington should have paid, but did not.

Con Edison seeks to retain its EIM policy limits to preserve the policy, in order to enable Con Edison to maximize the coverage that it can get from EIM. EIM is a mutual insurance company that is owned by its policyholders, primarily the utility industry, and services the needs of the utility industry.[4] Because of its role, EIM is knowledgeable about the utility industry, and uniquely capable of protecting utilities such as Con Edison.

The second type of damages that Con Edison suffered when Lexington failed to fulfill its duty to defend Con Edison concerns the fact that, before obtaining coverage from AEGIS under its first-layer excess policy, Con Edison first had to pay a $5 million self-insured retention ("SIR"), which operates like a deductible. Defense cost payments erode the SIR. (Kevane Decl., Ex. 6 at CONED0000663 (AEGIS policy Insuring Agreement I.(B)(8).) If Lexington had been defending Con Edison, its payment of defense costs would have eroded the SIR. Lexington thus should be held liable for the amount of defense costs that eroded the SIR, but which Con Edison had to pay when Lexington breached its duty to defend Con Edison. The question of when

---

[4] *See* EIM Overview, http://www.eimltd.com/flowmeter.cfm?meter=641, last visited May 20, 2015.

Lexington's duty to pay these defense costs began is raised by Lexington's second argument in the Motion.

The third type of damages, which is not implicated by Lexington's Motion, concerns the value of the time spent defending Con Edison in the Steam Rupture Lawsuits by in-house Con Edison attorneys who worked with co-counsel to defend Con Edison. This time is recorded in the same manner as outside counsel time, and the in-house attorneys' time is accounted for at an hourly rate. These costs are not covered by Con Edison's excess policies, but they are covered by the Lexington Policy.

Under well-settled New York law, any legal or factual doubt regarding the duty to defend must be resolved in favor of the policyholder, here Con Edison. Lexington has not argued that it should be relieved of its duty to defend, nor has it shown that its duty is subject to the limitations suggested in its Motion.

## ARGUMENT

Lexington's Motion must be denied because (1) Con Edison sustained damages as a result of Lexington's breach of its duty to defend that have not been paid by others, and (2) Con Edison's legal fees that were incurred before giving Lexington notice of the Steam Rupture Lawsuits are recoverable from Lexington.

### A.  Con Edison Sustained Damages as a Direct Result of Lexington's Breach

#### 1.  Lexington's Non-Payment has Left Con Edison in a Materially Worse Position

The New York Court of Appeals has characterized the duty to defend as constituting "litigation insurance." *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006). The duty to defend is therefore a distinct contractual obligation, and an insured may recover compensatory damages for an insurer's breach of its defense obligations. *U. S. Fid. & Guar. Co.*

4

*v. Copfer*, 48 N.Y.2d 871 (1979).  These compensatory damages may include consequential damages.  *E.g., Allstate Ins. Co. v. Aetna Cas. & Sur. Co.*, 475 N.Y.S.2d 219, 221 (N.Y. Sup. Ct. 1984) (citing *Johnson v. Gen. Mut. Ins. Co.*, 24 N.Y.2d 42, 49-50 (1969)); *Barney Greengrass, Inc. v. Lumbermans Mut. Cas. Co.*, 2010 WL 3069560, at *9 (S.D.N.Y. July 27, 2010), *aff'd*, 445 F. App'x 411 (2d Cir. 2011).

Con Edison has suffered damages as a direct result of Lexington's failure to defend it, and to pay its defense costs.  Con Edison was forced to deplete its excess policies prematurely, putting Con Edison in a materially worse position by prematurely limiting the availability of its EIM insurance.  *See, e.g., Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, 2008 WL 2477420, at *5 (N.D. Cal. June 18, 2008) ("[T]he conclusion that [the insured] is harmed by [the insurer's] breach insofar as prematurely exhausted policies are unavailable to pay on future claims follows from straight forward application of general principles of contract law.").  Recovering defense costs from Lexington will allow Con Edison to reverse this harm.

Under the terms of the Lexington Policy, the policies issued to Con Edison by AEGIS and EIM should not have been implicated until the Lexington Policy's limits were exhausted, after payment of Con Edison's defense costs by Lexington.  Because defense costs do not erode the Lexington policy limits, Lexington should have defended Con Edison, and paid its defense costs, until Lexington paid its $2 million policy limits in May 2011.  Under New York law, when one insurer, like Lexington, is the primary insurer, and other insurers are excess insurers, such as AEGIS and EIM, the primary insurer is held to have the burden of defending.  *See General Accid. Fire & Life Assur. Corp. v. Piazza*, 4 N.Y.2d 659 (1958); *Sport Rock International, Inc. v. American Cas. Co. of Reading, Pa.*, 878 N.Y.S.2d 339, 346 (1st Dep't 2009).  Lexington

5

acknowledged its duty to defend in an October 6, 2008 letter to Con Edison (Kevane Decl., Ex. 15 at LEX0000095), then breached that duty.[5]

Under the Lexington Policy, Lexington had a duty to defend Con Edison, and payment of defense costs did not erode policy limits. Coverage for defense costs should have been paid until the policy limits were "used up . . . in the payment of judgments or settlements[.]" (*See* Kevane Decl., Ex. 13 at LEX0003638 (Lexington Policy's Insuring Agreement), LEX0003685, and LEX0003701.) The AEGIS and EIM policies, on the other hand, are "cost-erosive," meaning that their limits are reduced by payment of both defense costs and indemnity. (Motion at 2.)

The premature exhaustion of insurance due to an underlying insurer's breach of its duty to defend constitutes damages that can be remediable in a coverage action. *E.g.*, *Flintkote Co.*, 2008 WL 2477420 at *23 (holding that insured was "directly harmed by [insurer's] failure to pay on past claims insofar as other insurance is prematurely exhausted and is unavailable to pay on future claims"). Con Edison has suffered actual damages due to the premature exhaustion of its AEGIS and EIM policies.

### 2.     Payment by Lexington Would Not Constitute "Double Recovery"

Ignoring the economic reality faced by Con Edison, Lexington wrongly argues that its payment of defense costs for the Steam Rupture Lawsuits would constitute a "double recovery" for Con Edison. (Motion at 6-9.) Lexington bears the burden of establishing that there would be a double recovery. *E.g., Weyerhauser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 674-75 (2000). Lexington has failed to meet this burden, because Con Edison has shown that it

---

[5] Lexington seeks to avoid the consequences of its failure to defend Con Edison by claiming that Con Edison has enough insurance to cover its costs. Lexington ignores the fact that, because its policy pays defense costs in addition to policy limits and has a duty to defend, it should have been the first insurer to defend Con Edison, and it should not have caused Con Edison prematurely to exhaust much of its EIM policy limits.

6

would be "made whole" only by reimbursement by Lexington coupled with the restoration of the EIM policy limits.

Con Edison's recovery from Lexington would restore the limits of the EIM policy. This would not result in a "double recovery" for Con Edison. *See Reliance Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 N.Y.S.2d 458, 460 (1st Dep't 1999) (ordering insurer to reimburse other insurer "in order to replenish the policy limits" of the latter's policy); *Flintkote Co.*, 2008 WL 2477420 at *7 ("Insofar as [insurer] argues that this constitutes impermissible double recovery, this situation does not occur because as [insured] recognizes and as this court concludes, any recovery by [insurer] B against [insurer] A offsets [insured's] recovery against [insurer] A. There is no double recovery."). "[C]ourts are fully capable of assuring there will be no double recovery." *Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, 2008 WL 3270922, at *10 (N.D. Cal. Aug. 6, 2008).

The cases cited by Lexington in support of its "double recovery" argument all are inapposite. (Motion at 6-9.) *Inchaustegui v. 666 5th Ave. Ltd. Partnership* dealt with a landlord who sought to recover from its tenant the full amount of the loss on a personal injury claim on the theory that the tenant breached an agreement to maintain liability insurance for the benefit of the landlord. 96 N.Y.2d 111, 113 (2001). The Court of Appeals held that the landlord's recovery was limited to its out-of-pocket costs because the loss had already been covered by the landlord's own insurance policy. *Id.* at 116. In that case, recovery of such costs was sufficient to place the landlord "in as good a position" as it would have been but for the tenant's breach, thus allowing the landlord to enjoy the benefit of its bargain. *Id.* In contrast, Con Edison can only be "made whole" by the restoration of its EIM policy limits. Con Edison's full recovery of defense

7

costs from Lexington is therefore in concert with the Court of Appeals' reasoning in *Inchaustegui*.[6]

### B.     Con Edison May Recover Pre-Notice Defense Costs

Lexington asserts that, to the extent it is required to reimburse Con Edison, it need not reimburse those costs incurred in defending the Steam Rupture Lawsuits before Con Edison provided notice of the claim to Lexington.  (Motion at 9-10.)  Lexington is wrong.

An insurer's duty to defend under New York law is "exceedingly broad."  *Cont. Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 649 (1993).  The duty to defend arises immediately upon the filing of the underlying complaint, not upon notice to the insurer or tender of the defense.  *E.g., HRH Const. Interiors, Inc. v. Royal Surplus Lines Ins. Co.*, 791 N.Y.S.2d 76, 78 (1st Dep't 2005).  "Thus, 'the insurer will be liable for defense costs from the time that the duty was triggered (i.e., when a complaint alleging facts arguably entitling the insured to coverage is made) . . . .'"  *Smart Style Indus., Inc. v. Pennsylvania Gen. Ins. Co.*, 930 F. Supp. 159, 163 (S.D.N.Y. 1996) (citation omitted) ("*Smart Style*").  Indeed, New York courts have found coverage for defense costs from the time of the commencement of the underlying action.  *E.g., Mack-Cali Realty Corp. v. NGM Ins. Co.*, 990 N.Y.S.2d 253, 256 (2d Dep't 2014) (affirming granting of policyholder's summary judgment motion on duty to defend; "Furthermore, the allegations that trigger a duty to defend also trigger an obligation to pay defense costs.  Since

---

[6]     *Garofalo v. Empire Blue Cross & Blue Shield*, 67 F. Supp. 2d 343, 357 (S.D.N.Y. 1999), *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 399  (S.D.N.Y. 2014), and *Asher v. Unarco Material Handling, Inc.*, 862 F. Supp. 2d 551, 556-57 (E.D. Ky. 2012), all cited by Lexington, are inapposite, because they involve true "double recovery" scenarios, unlike this case, in which recovery from Lexington is necessary to remedy Con Edison's injury.

8

NGM's duty to defend under the terms of the policy is triggered by a 'suit' against an insured, such duty arose upon the commencement of the underlying personal injury action.").[7]

Lexington cites *one case* for the proposition that an insured can only recover costs incurred after the date it notified its insurer of the claim, and Lexington misrepresents to this Court that case's holding. (Motion at 10.) *Smart Style* endorsed the view that "the insurer will be liable for defense costs from the time that the duty was triggered (i.e., when a complaint alleging facts arguably entitling the insured to coverage is made) . . . ." 930 F. Supp. at 163. *Smart Style* held that, on the facts before it, pre-notice defense costs were not recoverable because they were in the nature of "voluntary payments" made without the insurer's consent, in circumstances in which the insured itself had initiated the underlying lawsuit and was defending against counterclaims resulting from the complaint. *Id.* at 163-64. *Smart Style* does not stand for the broad proposition that a policyholder may not recover pre-notice defense costs.

Con Edison is entitled to recover its defense costs it incurred in defending the Steam Rupture Lawsuits beginning from their filing – not September 14, 2007 as Lexington contends. *See Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,* 1999 WL 993689, at *6 (S.D.N.Y. Nov. 2, 1999), *aff'd in part, vacated in part on other grounds, rev'd in part on other grounds*, 252 F.3d 608 (2d Cir. 2001) (denying insurer's summary judgment motion on duty to defend; holding that whether insured could recover pre-notice expenses incurred during three month period before giving notice "is a question of fact more appropriately answered by a jury.").

Lexington is incorrect in asserting that Con Edison somehow "concedes" in its complaint in this action that it may only seek to recover costs incurred after September 14, 2007. (Motion

---

[7] A trial court decision from 40 years ago stated that "[t]he rule is that in the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so, albeit the duty to defend may have arisen at the time of the accident." *Sucrest Corp. v. Fisher Governor Co., Inc.*, 371 N.Y.S.2d 927, 941 (N.Y. Sup. Ct. 1975). The appellate court cases since that decision demonstrate that *Sucrest* is not New York law.

at 10.)  Lexington misreads the complaint.  Con Edison alleged that "Lexington should have paid **all** of Con Edison's defense costs from the time Lexington received notice . . . ."  (Complaint ¶ 16 (emphasis added).)  The allegation is that Lexington should have begun paying Con Edison at the time it received notice, but those payments should have included all of Con Edison's defense costs.

## CONCLUSION

For the foregoing reasons, Lexington's Motion should be denied.

Dated:  May 22, 2015			Respectfully submitted,

			ORRICK, HERRINGTON & SUTCLIFFE LLP


			By:  /s/ *David L Elkind*
				David L. Elkind
				1152 15th Street, NW
				Washington, DC  20005
				202-339-8462 (Phone)
				202-339-8500 (Facsimile)
				delkind@orrick.com

				*Attorney for Plaintiff Consolidated Edison Company of New York, Inc.*

10