**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., | ) | |
| | ) | Case No. 14 Civ. 6547 (CM) (JLC) |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| LEXINGTON INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Lawrence Klein
Timothy D. Kevane
SEDGWICK LLP
225 Liberty Street, 28th Floor
New York, NY 10281
Telephone: (212) 422-0202
Facsimile: (212) 422-0925
lawrence.klein@sedgwicklaw.com
timothy.kevane@sedgwicklaw.com

*Attorneys for Defendant*
*Lexington Insurance Company*

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

A. CON EDISON'S BREACH OF CONTRACT CLAIM FOR PREVIOUSLY-REIMBURSED COSTS FAILS AS IT HAS NOT SUSTAINED ANY DAMAGES ..... 2

1. Fundamental Breach of Contract Principles Do Not Permit Con Edison's Claim for Previously-Reimbursed Costs ..... 2

2. Con Edison's "Premature Exhaustion" Theory Does Not Apply Here ..... 3

a. The Facts in Flintkote ..... 3

b. Flintkote Does Not Apply ..... 4

c. Con Edison Admitted It Still Has Sufficient Insurance for the Lawsuits ..... 6

B. CON EDISON CANNOT RECOVER COSTS IT INCURRED PRIOR TO PROVIDING NOTICE OF THE CLAIM TO LEXINGTON ..... 8

C. CON EDISON WAS NOT "FORCED" TO TURN TO ITS OWN INSURERS DUE TO LEXINGTON'S ALLEGED BREACH ..... 10

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

Page(s)

### Cases

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 106 S.Ct. 2505 (1986) ........ 2

Asher v. Unarco Material Handling, Inc.,
862 F. Supp. 2d 551 (E.D. Ky. 2012) ........ 2, 7

AstenJohnson, Inc. v. Columbia Cas. Co.,
562 F.3d 213 (3rd Cir. 2009) ........ 5

Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.,
27 A.D.3d 84 (1st Dept. 2005) ........ 8

Fleisher v. Phoenix Life Ins. Co.,
18 F. Supp. 3d 456 (S.D.N.Y. 2014) ........ 2, 7

Flintkote Co. v. Gen. Acc. Assur. Co. of Canada,
No. 04-01827, 2008 WL 3270922 (N.D. Cal. Aug. 6, 2008) ........ 3-7

Garofalo v. Empire Blue Cross & Blue Shield,
67 F. Supp. 2d 343 (S.D.N.Y. 1999) ........ 2, 7

Hayes v. New York City Dept. of Corrections,
84 F.3d 614 (2nd Cir. 1996) ........ 7

HRH Const. Interiors, Inc. v. Royal Surplus Lines Ins. Co.,
16 A.D.3d 115 (1st Dept. 2005) ........ 9

Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,
No. 98-6454, 1999 WL 993689 (S.D.N.Y. Nov. 2, 1999) ........ 9

Inchaustegui v. 666 5th Avenue Limited Partnership,
96 N.Y.2d 111 (2001) ........ 2, 5, 7

Mack-Cali Realty Corp. v. NGM Ins. Co.,
119 A.D.3d 905 (1st Dept. 2014) ........ 9

Margo v. Weiss,
213 F.3d 55 (2nd Cir. 2000) ........ 7, 10

Perma Research & Dev. Co. v. Singer,
410 F.2d 572 (2nd Cir. 1969) ........ 7, 10

Reliance Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 262 A.D.2d 64 (1st Dept. 1999) ........ 6

Smart Style Indus., Inc. v. Pennsylvania General Ins. Co., 930 F. Supp. 159 (S.D.N.Y. 1996) ........ 8

Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379 (S.D.N.Y. 2014) ........ 2

Travelers Casualty and Surety Co. v. Alfa Laval, Inc., 964 N.Y.S.2d 63, 37 Misc.3d 1230(A) (N.Y. Sup. 2011), aff'd 100 A.D.3d 451 (2012)...... 2, 7

Whitehurst v. 230 Fifth, Inc., 998 F. Supp. 2d 233 (S.D.N.Y. 2014) ........ 7, 9

**Rules**

Fed. R. Civ. P. 56 ........ 2

Local Rule 56.1 ........ 7

**Other Authority**

Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes, § 5.01(c) (17th ed. 2015) ........ 8

## PRELIMINARY STATEMENT

It is undisputed that Con Edison was reimbursed by other insurers for virtually all of the costs it now seeks from Lexington. Con Edison has therefore not suffered any damages and cannot sustain a cause of action for those previously-reimbursed costs. Furthermore, Con Edison has made no claim nor offered any evidence that its insurance has been exhausted, forcing it to pay for any of the Lawsuits that remain pending. Indeed, Con Edison admitted in discovery that its own insurance is sufficient to cover its liability in the Lawsuits. Since Con Edison has not suffered damages as to the previously-reimbursed costs, Lexington's motion should be granted.

Although not relevant to the motion, Con Edison seeks to frame this dispute as a breach by Lexington of its duty to defend Con Edison in the Lawsuits. However, Con Edison never wanted Lexington to provide it with a defense. Con Edison retained defense counsel before it notified Lexington of the Lawsuits and, for two years, declined to provide the identity of the lawyers it retained to Lexington [See Supplemental Kevane Decl. filed herewith, Ex. 23 (defense counsel retention as of July 2007); and Exs. 15 (pg. 0095), 16 and 17 (Lexington's requests for bills and identity of defense counsel)].

Con Edison turned to its own insurers to pay for its defense lawyers, and subsequently sought to have Lexington pay it for those previously-reimbursed costs. Con Edison admits it is not entitled to these costs in its opposition: "Con Edison does not seek to keep the money that Lexington should pay for the first category of damages." (Opp., pg. 3, emphasis added). Thus, Con Edison's own argument concedes it has no damages and its claim is fatally flawed.

The balance of Con Edison's claim consists of costs its insurers did not pay, i.e., a self-insured retention ("SIR") and in-house counsel. Con Edison can only recover costs incurred after it provided notice to Lexington and before the policy limit was paid. Con Edison's own pleadings, discovery responses and the law are all consistent with that rule.

## ARGUMENT

### A. CON EDISON'S BREACH OF CONTRACT CLAIM FOR PREVIOUSLY-REIMBURSED COSTS FAILS AS IT HAS NOT SUSTAINED ANY DAMAGES

In order to defeat summary judgment, Con Edison must proffer evidence of specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). It may not rely on conclusory allegations or unsubstantiated speculation. Fleisher v. Phoenix Life Ins. Co., 18 F. Supp. 3d 456, 466 (S.D.N.Y. 2014); Anderson, 477 U.S. at 249. Con Edison has admitted that its defense costs were paid by its own insurers (SF ¶¶ 15-16, 28). It has failed to offer any specific facts warranting denial of summary judgment and its "premature exhaustion" theory fails on both the law and the facts.

#### 1. Fundamental Breach of Contract Principles Do Not Permit Con Edison's Claim for Previously-Reimbursed Costs

As explained in Lexington's moving brief (pgs. 6-8), New York's Court of Appeals has made it clear that where the insured's defense costs are paid by its insurer, the insured has no viable breach of contract claim against another party for those same costs. Inchaustegui v. 666 5th Avenue Limited Partnership, 96 N.Y.2d 111 (2001). See also Garofalo v. Empire Blue Cross & Blue Shield, 67 F. Supp. 2d 343, 347 (S.D.N.Y. 1999) (no claim for costs previously paid by another insurer); Travelers Casualty and Surety Co. v. Alfa Laval, Inc., 964 N.Y.S.2d 63, 37 Misc.3d 1230(A) (N.Y. Sup. 2011) (claim reduced by amount insured already reimbursed); Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 399 (S.D.N.Y. 2014) (no breach of contract defense where defendant already paid for services). And in virtually identical facts, the insured's attempt to recover previously-reimbursed defense costs from another insurer was rejected in Asher v. Unarco Material Handling, Inc., 862 F. Supp. 2d 551 (E.D. Ky. 2012) (citing Garofalo).

Con Edison argues these cases are different because they involve "true double recovery scenarios," whereas recovery is necessary here to remedy "Con Edison's injury." (Opp., pg. 8, fn. 6). No such injury exists: Con Edison was previously paid in full for the costs (SF ¶¶ 12-16, 28; excepting the SIR and in-house counsel costs). It admitted it has sufficient insurance for the underlying Lawsuits (SF ¶ 7). And, equally significantly, as discussed below, it offers no evidence of any exhaustion of its insurance or that it will be forced to pay anything out-of-pocket. As a result, these authorities warrant the same result here: Con Edison cannot recover from Lexington those costs which were previously reimbursed by its own insurers.

**2. Con Edison's "Premature Exhaustion" Theory Does Not Apply Here**

***a. The Facts in Flintkote***

Con Edison alleges it suffered damages because the EIM policy has been "prematurely exhausted," citing Flintkote Co. v. Gen. Acc. Assur. Co. of Canada, No. 04-01827, 2008 WL 3270922 (N.D. Cal. Aug. 6, 2008). Con Edison distorts the holding of Flintkote, which does not support Con Edison's claim.

In Flintkote, the insured faced more than 270,000 asbestos claims costing more than $630 million. These costs were paid by various liability insurers, whose policies were subject to aggregate limits, thereby making them unavailable to respond to additional claims. One insurer however, the defendant Aviva, did not pay. Its policy provided a per-occurrence limit of $100,000, but unlike the other insurers, was not subject to any aggregate limit. Aviva nonetheless argued that Flintkote suffered no damage since all of its liability was paid by Flintkote's other insurers.

The court allowed Flintkote to proceed with a claim for recovery against Aviva of costs it would have to pay out on future claims (due to exhaustion of its other insurance), pursuant to a rule that it articulated as follows:

> [W]here an insurer with unlimited aggregate liability breaches, and the gap is filled by an insurer whose performance reduces a liability policy with an aggregate limit, the insured suffers damage directly when the policy with an aggregate limit is unavailable to respond to later claims. ... [The insured] is directly harmed insofar as it can no longer rely on the policy with an aggregate limit to cover *future* claims and is forced to pay the claim on its own.

Flintkote at * 4 (emphasis added; italics in original).

The court identified specific scenarios in which the insured suffers actual damages where: (a) Aviva does not pay any claims and (b) the other insurers do pay claims, which exhaust their policies. Flintkote at * 4. In those scenarios, the court noted that the insured is forced to pay money out of its own pocket (because its other insurance is fully exhausted). For these scenarios, the court calculated the precise, out-of-pocket dollars that Flintkote is forced to pay, i.e., its "damages." Flintkote at * 4. Critically, these are amounts Flintkote has to pay as a result of the other insurance being "consumed" and "unavailable to pay" future claims, leaving Flintkote with "no available insurance." Flintkote at * 5 (emphasis added). In other words, Flintkote was personally "on the hook" for those claims. Id. Because of that, the court held that Flintkote could recover from Aviva what it paid out of its own pocket due to Aviva's breach. Id at * 5. The court thus agreed to apply the insured's theory of premature exhaustion to the "unique circumstances" of the case before it. Id. at * 5.

***b. Flintkote Does Not Apply***

On its face, the rule expressed in Flintkote (quoted above) does not apply here. First, Con Edison does not refer to any policy with an unlimited aggregate limit (there is none). Second, Con Edison has not offered any evidence that its own insurance is unavailable to pay for any of the Lawsuits that remain pending – forcing Con Edison to pay from its own pocket. Third, Con Edison's argument ignores that the Flintkote court's decision was predicated on the requirement that the insured must still show "damages," which it established in the scenarios set

forth in the opinion. Not only do no such "damages" exist here, but Con Edison does not make any contention, let alone offer evidence, of any damages. Unlike Flintkote, there is no claim or evidence in our case (nor can there be) showing: (1) that Con Edison's own insurance – [redacted] (see below) – is "consumed" or "exhausted," such that Con Edison can "no longer rely on it"; and/or (2) any amount that Con Edison is "forced" to pay after being left "on the hook" because its own insurance was consumed. Given this factual void, Flintkote provides no support for Con Edison's claim.

The damages requirement for the "novel" premature exhaustion theory was confirmed in AstenJohnson, Inc. v. Columbia Cas. Co., 562 F.3d 213 (3rd Cir. 2009). There, the defendant insurer declined coverage for asbestos claims, which were covered by the insured's other insurers. The insured alleged a breach of contract claim seeking its defense costs from the non-paying insurer, amounting to millions of dollars which the other insurers paid. The court found that the insured itself "had not yet suffered 'out of pocket' losses because it had 'its other carriers pay' to defend." Id. at 219. The issue was whether the insured had a right to a jury trial on the breach of contract claim if it did not suffer any damages. The court held it did not, reiterating a fundamental rule that is consistent with Inchaustegui: "[A]n insured is obviously not entitled to recover litigation expenses and indemnity for a particular claim twice from two different insurers." AstenJohnson at 222. The court cited to Flintkote in noting that "far more than a 'burn rate' [the rate at which the insured's available insurance is being reduced] needs to be shown to successfully support the 'premature exhaustion' theory which [the insured] appears to be pressing…." Id. at 222 and fn. 1.

In other words, the mere partial reduction of the insurance available to the insured does not meet the rule articulated in Flintkote. Pursuant to Flintkote and AstenJohnson, Con Edison

has no claim here because it does not demonstrate (nor can it) exhaustion of its insurance and resulting out-of-pocket loss, and cannot recover the same costs twice.

Con Edison also suggests there will be no double recovery, citing Flintkote and Reliance Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 262 A.D.2d 64 (1st Dept. 1999). By this argument, Con Edison admits it did not incur any damages as to the previously-reimbursed costs. In fact, Con Edison's admission that it does not have a claim to the money, which it affirmatively states it does not intend to keep, highlights why its damages theory under Flintkote does not apply: unlike the damages to the insured in Flintkote due to exhaustion, here, Con Edison has none. Furthermore, the statement in Flintkote concerning the avoidance of a double recovery referred to offsetting two distinct claims by Flintkote – one for direct damages to itself and another as an assignee of its insurers. Here, Con Edison only alleges one claim for breach of contract for alleged damages to itself. Reliance Ins. Co. encompassed an action by one insurer against another. That is not our case. Since virtually all of the costs were already reimbursed to Con Edison, the specter of double recovery is indisputable.

***c. Con Edison Admitted It Still Has Sufficient Insurance for the Lawsuits***

In addition to the absence of any claim or evidence by Con Edison that its own insurance is unavailable to pay for the Lawsuits or that Con Edison is forced to personally pay anything, Con Edison admitted the complete opposite in discovery, representing that its own insurance is sufficient to cover its exposure in the Lawsuits (SF ¶ 7). In order to fabricate a reason to oppose Lexington's motion, Con Edison attempts to backtrack from this admission with the vague and ambiguous suggestion that "at present, it does not know" whether its insurance will be sufficient for the Lawsuits (Con Edison's response to SF ¶ 7).

While this contradiction is ultimately irrelevant, the courts reject a party's attempt to create a triable issue of fact on summary judgment by contradicting prior discovery. Hayes v.

New York City Dept. of Corrections, 84 F.3d 614, 619 (2nd Cir. 1996) citing Perma Research & Dev. Co. v. Singer, 410 F.2d 572, 578 (2nd Cir. 1969); and Margo v. Weiss, 213 F.3d 55, 61 (2nd Cir. 2000). Moreover, Con Edison's new position is not supported by any evidence as required by Local Rule 56.1(d). Indeed, its failure to admit or deny the fact and instead assert "it doesn't know" is not a permissible basis on which to rebut a fact submitted as undisputed. Whitehurst v. 230 Fifth, Inc., 998 F. Supp. 2d 233, 248 (S.D.N.Y. 2014); Fleisher, above.

Con Edison's attempt to create a factual issue in responding to SF ¶ 7 concerning its available insurance is also meritless given the actual amount of the insurance (Con Edison skirts around this fact in its opposition). Con Edison's insurance is not limited to the $35 million AEGIS policy and the $100 million EIM policy. Con Edison has a total of [REDACTED] in liability insurance for the Lawsuits (See Suppl. Kevane Decl. herewith, Ex. 25; and Exs. 26 and 24). Given this vast pool of insurance, Con Edison's concession in discovery that it has enough insurance was to be expected (SF ¶ 7). Its attempted evasion in its response to SF ¶ 7 is ill-considered, especially in light of Con Edison's lack of transparency about the amount of its own insurance. And in reference to its premature exhaustion theory under Flintkote, at the risk of repeating the argument above, there is no claim or evidence that this [REDACTED] in insurance is or will ever be exhausted in paying for the Lawsuits, which Con Edison admitted (SF ¶ 7).

To summarize, Con Edison did not incur any damages as to the costs already reimbursed by its own insurers. There is no claim – let alone evidence – that its own insurance is unavailable to pay for the Lawsuits due to exhaustion or that Con Edison is obligated to personally pay anything in the Lawsuits due to that exhaustion. Under Inchaustegui, Garofalo, Travelers and Asher, above, partial summary judgment for Lexington is warranted.

## B. CON EDISON CANNOT RECOVER COSTS IT INCURRED PRIOR TO PROVIDING NOTICE OF THE CLAIM TO LEXINGTON

What remains of Con Edison's claim is amounts it incurred in order to satisfy its $5 million SIR and its in-house counsel costs. To the extent Con Edison may be entitled to reimbursement from Lexington for either of these categories, it may not recover costs incurred prior to providing notice of the claim to Lexington, i.e., September 14, 2007 (SF ¶ 20). Smart Style Indus., Inc. v. Pennsylvania General Ins. Co., 930 F. Supp. 159, 164 (S.D.N.Y. 1996) (insured can only claim costs incurred after date it notified its insurer of the claim pursuant to voluntary payment provision); Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co., 27 A.D.3d 84, 94 (1st Dept. 2005) citing Smart Style (limiting recovery of defense costs to those incurred from and after the date the insurer received notice of the underlying lawsuit); and Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes, § 5.01(c) (17th ed. 2015) ("Pre-tender defense costs consistently have been held not recoverable under an insurance clause prohibiting voluntary payments made without the consent of the insurer." (citing Smart Style, among others)).

Like the policy in Smart Style, the Lexington Policy contains a standard voluntary payment provision which prohibits the insured from incurring costs without Lexington's consent (Kevane Decl., Ex. 13, § V.2.d at pg. 3656). The voluntary payment provision "is a part of the policy and cannot be ignored." Smart Style at pg. 163. Con Edison incorrectly argues that Smart Style is limited to its facts, but it is clear that the pivotal fact was notification of the claim to the insurer. Indeed, on a motion for reconsideration, the court reinforced that the "critical date" for reimbursement of costs is when the insured first gave notice. Smart Style Indus., Inc. v. Pennsylvania General Ins. Co., 947 F. Supp. 102, 103 (S.D.N.Y. 1996).

Con Edison's own pleadings and discovery responses follow this rule. Con Edison alleges that "Lexington should have paid all of Con Edison's defense costs from the time Lexington received notice until it paid its policy limits." (Ex. 3 to Kevane Decl., ¶ 16; emphasis added). Con Edison cannot refute this statement now. Whitehurst, above, 998 F. Supp. at 248 (plaintiff bound by allegations). In interrogatory responses, Con Edison further asserted that:

> Lexington was obligated to defend Con Edison until Lexington paid its policy limits in May 2011, once Lexington received notice of the Con Edison claim. Defense costs paid by Con Edison after it gave notice to Lexington that eroded the self-insured retention are defense costs that should have been paid by Lexington.

(Ex. 5 to Kevane Decl., response to interrogatory no. 11 at pg. 4; emphasis added.). Con Edison argues that Lexington misreads these statements. But there is no misreading. These statements are plainly worded and are consistent with the law that an insured cannot recover costs it incurred before furnishing notice to its insurer.

Con Edison cites to HRH Const. Interiors, Inc. v. Royal Surplus Lines Ins. Co., 16 A.D.3d 115 (1st Dept. 2005) and Mack-Cali Realty Corp. v. NGM Ins. Co., 119 A.D.3d 905 (1st Dept. 2014) for the proposition that the duty to defend arises from the commencement of the underlying action. In HRH, the issue was whether the insurer had a duty to defend upon being notified of the accident. Since the policy only provided a defense for "suits," the court noted that the duty did not arise until such a "suit" was commenced. HRH at 117. Mack-Cali cites HRH for the same proposition. Mack-Cali at 907. These cases say nothing about the insured's ability to recover defense costs incurred before providing notice to the insurer of the suit.

Citing to Hugo Boss Fashions, Inc. v. Fed. Ins. Co., No. 98-6454, 1999 WL 993689 (S.D.N.Y. Nov. 2, 1999), Con Edison also suggests that pre-notice costs raises a factual issue as to reasonable expectations. There is no such issue here, given Con Edison's expressed adherence

to the rule in its pleadings and discovery responses. Furthermore, Con Edison has not submitted any evidence as to what its alleged reasonable expectations were. But even if it did, it cannot contradict its own discovery responses in order to "conjure up" a factual question solely in an attempt to defeat a summary judgment motion. See Perma Research, Margo, above.

## C. CON EDISON WAS NOT "FORCED" TO TURN TO ITS OWN INSURERS DUE TO LEXINGTON'S ALLEGED BREACH

Con Edison advances the spurious notion that it was "forced" to turn to its own insurers due to Lexington's alleged breach. While irrelevant, Con Edison does not provide any evidence to support this allegation. Moreover, Lexington did not force Con Edison to do anything. Con Edison provided notice to its own insurers one day after the incident (Suppl. Kevane Decl., Ex. 26). It retained defense counsel as of July 2007 (Suppl. Kevane Decl., Ex. 23), and regularly sent its bills to its insurers for payment beginning October 2007 (SF ¶ 8-14). In contrast, Con Edison provided notice to Lexington on September 14, 2007 (SF ¶ 20). By then, it was already incurring costs and already retained defense counsel, without consultation with Lexington, which repeatedly asked Con Edison to disclose the identity of its defense counsel (Kevane Decl., Exs. 16 and 17). Although Lexington asked for the defense counsel's bills in October 2008, July 2009 and March 2010 (SF ¶¶ 23-25), Con Edison sent Lexington the 2007 bills in 2011 (SF ¶ 29), and the remaining bills in 2012 (SF ¶ 31). By then, virtually all of the bills had been paid by AEGIS and EIM.

## CONCLUSION

Based on the foregoing, defendant Lexington Insurance Company respectfully requests that this motion be granted.

Dated: June 4, 2015

Sedgwick LLP

/s/ Timothy D. Kevane

Lawrence Klein
Timothy D. Kevane
225 Liberty Street, 28th Floor
New York, NY 10281
Tel.: (212) 422-0202 Fax: (212) 422-0925
*Attorneys for Lexington Insurance Company*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 4, 2015, a copy of the Reply Memorandum in Support of Defendant's Motion for Partial Summary Judgment; Supplemental Declaration of Timothy Kevane; and exhibits thereto were served using the Court's CM/ECF system with electronic notice of such filing on:

David L. Elkind
Richard P. Gallena
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone (202) 339-8400
Facsimile (202) 339-8500
delkind@orrick.com
rgallena@orrick.com
*Attorneys for Plaintiff*

/s/ Timothy D. Kevane
Timothy D. Kevane